UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

| | |
|---|---|
| CLARENCE SKINNER, ) | |
| ) | |
| Petitioner, ) | Civil Action No.  7: 05-370-DCR |
| ) | |
| V. ) | |
| ) | |
| SUZANNE HASTINGS, Warden, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Respondent. ) | |
| ) | |

\*\*\*\*\*   \*\*\*   \*\*\*\*\*   \*\*\*   \*\*\*\*\*

Clarence Skinner, an individual presently confined at the United States Penitentiary-Big Sandy in Inez, Kentucky, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. In his petition, Skinner challenges the United States Parole Commission's ("U.S.P.C.") denial of his parole application, asserting that the U.S.P.C.'s decision violated the rules and regulations of the District of Columbia ("D.C.") Parole Board at D.C. Code 24-209, violated the *Ex Post Facto* Clause of the Constitution of the United States, violated the Administrative Procedures Act ("APA"), and was the product of impermissible "double counting."

This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972).  The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner.  *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).   The parties have

completed their briefing of the issues presented in Skinner's petition, and this matter is ripe for decision.

## BACKGROUND

Skinner was convicted of manslaughter under D.C. Code §22-2405 and of possessing a firearm during the commission of a crime of violence under D.C. Code §23-3204. Skinner was sentenced on May 5, 1994, to an aggregate term of 8 to 24 years' imprisonment by the Superior Court of the District of Columbia.

On August 5, 1998, authority to make parole decisions for D.C. Code offenders was transferred from the D.C. Board of Parole to the U.S.P.C. D.C. Code §24-131(a); 28 C.F.R. §2.70; *Franklin v. District of Columbia*, 163 F.3d 625, 632 (D.C. Cir. 1998). The U.S.P.C., while required to apply District of Columbia parole regulations to D.C. Code offenders, was authorized to "amend or supplement" those regulations under D.C. Code §24-131(a)(1). From 1998 to 2000, the U.S.P.C. utilized this authority to revise the D.C. Board of Parole's 1987 guidelines to bring its regulations closer in line to the actual practice of the D.C. Board of Parole in order to increase predictability in parole determinations. The revised guidelines are set forth at 28 C.F.R. §2.80. Both the D.C. Parole Board's 1987 guidelines and the post-2000 amendment guidelines set forth at 28 C.F.R. §2.80 examine both pre- and post-incarceration factors to determine parole suitability. *Ellis v. District of Columbia*, 84 F.3d 1413, 1415-17 (D.C.Cir. 2000).

Skinner first became eligible for parole on November 18, 1999. The U.S.P.C. hearing examiner conducted Skinner's initial parole hearing on March 9, 1999. The hearing examiner's

notes indicate that, during the hearing, Skinner asserted his innocence of the manslaughter charge because the shooting was done in self-defense. Skinner protested against his prior criminal offenses being used to calculate his Salient Factor Score and Grid Point Score, and asserted his innocence of a number of incident reports incurred while incarcerated.

Applying the revised guidelines, codified at 28 C.F.R. §2.80, the hearing officer set Skinner's Salient Factor Score at 3, his Base Point Score at 9, assessed one negative point in Category IV for negative institutional behavior and one positive point in Category V for ordinary program achievement. The examiner commented that "This prisoner is extremely violent and dangerous. He probably should serve his entire sentence no matter what his Grid Score is." Based upon his evaluation, the examiner recommended that parole be denied and that a rehearing date be set for 60 months after Skinner's initial eligibility date of November 18, 1999. The examiner acknowledged that Skinner's Base Point Score of 9 would indicate a rehearing date in 22-28 months after his initial parole eligibility date under the rehearing guidelines, but further stated that a departure from those guidelines was warranted because of: (i) the violence of Skinner's crime, (ii) Skinner's lack of acceptance of responsibility, and (iii) his poor institutional behavior, all indicating a high risk of recidivism.

On April 22, 1999, the U.S.P.C. substantially adopted the hearing examiner's recommendation and issued its decision denying parole and setting a rehearing date for November 2004. The decision stated:

> After consideration of all factors and information presented, a departure from the rehearing guidelines at this consideration is warranted for the following reasons: You are a more serious risk than indicated by your Base Point Score in that you have prior convictions for armed robbery and assault. Your present offense

> involved what witnesses described as a cold blooded killing of another with no apparent provocation on the part of the victim. Also, your record of prison misconduct reports includes numerous incidents of threatening behavior toward prison staff.

Skinner then filed a petition for a writ of habeas corpus challenging that decision, asserting that the U.S.P.C. violated his constitutional rights by departing from the guideline range and allegedly "double counting" the same factors to both determine the presumptive guideline range and to deny parole. The federal district court in the District of Columbia rejected his claims and upheld the U.S.P.C.'s decision denying parole. The court noted that a prisoner has a due process liberty interest in parole only if the statute or regulation that controls the parole determination provides that a prisoner's parole determination turns inflexibly upon the existence or non-existence of certain conditions. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 463 (1989). The court held that because the 1999 regulations applicable to Skinner, 28 C.F.R. §2.80(m), afforded the U.S.P.C. wide discretion in its parole determinations, Skinner lacked a due process interest in parole. *Skinner v. United States Parole Commission*, Civil Action No. 01-277 (citing *Blair-Bey v. Quick*, 151 F.3d 1036, 1047-48 (D.C. Cir. 1998)).

Prior to Skinner's second parole hearing in 2004, on September 21, 2004, a hearing examiner for the U.S.P.C. generated a prehearing report. That prehearing report included information revealed from Skinner's initial parole consideration hearing in 1999, and compared those results with the equivalent results under the new guidelines set forth at 28 C.F.R. §2.80, as amended. The prehearing examiner determined that Skinner's SFS score of 3 and Base Point Score of 9 under the old system were the same as the result reached under the new guidelines. The examiner also evaluated how Skinner's prior disciplinary behavior would affect his parole

-4-

under the new system. Under the old guidelines, Skinner's disciplinary actions in prison provided a rehearing range of 22-28 months given the addition of a positive point for Negative Institutional Behavior and Base Point Score of 9. Under the new guidelines, the net result of those same disciplinary actions resulted in a Total Rescission Guidelines of 0-10 months under 28 C.F.R. §2.36. Because Skinner's Base Guideline Range was 110 to 140 months and he had 87 months to serve before his Parole Eligibility Date, the resulting Guideline Range was 197 to 237 months.

The U.S.P.C. hearing examiner conducted Skinner's parole re-hearing on October 5, 2004, and reached the same conclusions as those indicated by the prehearing report. He did, however, reduce the resulting Guideline Range by 7 months for Superior Program Achievement. Because Skinner would have to be released no later than his mandatory release date, on September 29, 2007, with credit for good time, before he served the bottom end of the resulting Guideline Range for parole of 190 months in April 2010, the hearing examiner recommended a departure below the Guideline Range and continued Skinner's parole eligibility to the expiration of his sentence at his mandatory release date.

By Notice of Action dated October 26, 2004, the U.S.P.C. adopted the hearing examiner's recommendation, departed below the guideline range to bring Skinner's parole eligibility date forward to his mandatory release date, and continued Skinner's sentence to expiration in September 29, 2007.

**DISCUSSION**

At the outset, the Court notes that the decision that Skinner challenges in the instant proceeding is one by the U.S.P.C. to depart *below* the applicable guideline range. Thus, if successful in invalidating that departure, Skinner would effectively *increase* his own term of incarceration, extending his release date from September 29, 2007, to at least April, 2010. 28 U.S.C. §2241(a) grants this Court authority to grant "[w]rits of habeas corpus." The essential nature of a writ of habeas corpus is to enable those unlawfully incarcerated to obtain their freedom – that is, to be released from official custody. *Johnson v. Avery*, 393 U.S. 483 (1969). Because the effect of granting the relief requested by Skinner would be to increase the term of his incarceration rather than decrease it, it may be fairly questioned whether this proceeding may be properly characterized as one falling within the confines of Section 2241. Nonetheless, because neither of the parties has raised the issue, and because the decision by the U.S.P.C. is one which undoubtedly affects the duration of his confinement, *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Court will assume Skinner's petition is cognizable under 28 U.S.C. §2241.

Although not entirely clear, Skinner appears to challenge the U.S.P.C.'s parole decision on three distinct grounds. Skinner asserts that:

1. The Commission's application of its 2000 parole guidelines, instead of the 1987 D.C. Parole Board guidelines in effect at the time of his conviction, violates the *Ex Post Facto* Clause of the Constitution of the United States;

2. The Commission's parole denial was arbitrary and capricious in violation of the Administrative Procedures Act; and

3. The Commission engaged in impermissible "double counting" by using the same facts to both establish his presumptive guideline range and then to justify its departure from that guideline range.

**1.     Abuse of the Writ**

As a preliminary matter, Skinner has already challenged the U.S.P.C.'s 1999 parole denial in a prior Section 2241 habeas corpus proceeding before the District Court for the District of Columbia. *Skinner v. United States Parole Commission*, Civil Action No. 01-277. Allowing him to raise any claim in the instant proceeding that he actually raised in that case would constitute an impermissible successive petition; allowing him to raise a claim that could have been raised in that case would constitute an "abuse of the writ" which this Court will not permit. *Kuhlmann v. Wilson*, 477 U.S. 436, 444 n.6 (1985).

Under 28 U.S.C. §2241(a), a district court may refuse to entertain a repeat application for the writ by a federal prisoner "if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255." Therefore, "[w]here a prisoner files a petition or engages in other conduct that 'disentitle[s] him to the relief he seeks,' the federal court may dismiss the subsequent petition on the ground that the prisoner has abused the writ." *Kuhlmann*, 477 U.S. at 444 n.6 (citing *Sanders v. United States*, 373 U.S. 1, 17-19 (1963)). Because Skinner's challenge to the U.S.P.C.'s 1999 parole denial has already been addressed on the merits by another federal court, it will not be reviewed again on the merits here. *McCleskey v. Zant*, 499 U.S. 467, 491-92 (1991); *Zayas v. INS*, 311 F.3d 248, 255 (3rd Cir. 2002) (Section 2241 habeas petitions are subject to abuse of the writ doctrine); *In re Hanserd*, 123 F.3d 922 (6th Cir. 1997).

### 2.     **Ex Post Facto Claim**

Skinner first contends that U.S.P.C.'s application of the revised parole guidelines set forth at 28 C.F.R. §2.80 violates the *Ex Post Facto* Clause. The *Ex Post Facto* Clause prohibits the retroactive application of a law which increases the punishment for a crime that an individual has already committed. *California Dep't of Corrections v. Morales*, 514 U.S. 499, 504 (1995); *Collins v. Youngblood*, 497 U.S. 37, 42 (1990). Changes in the rules to determine whether prisoners may receive parole that are applied to those already convicted may violate this restriction. *Weaver v. Graham*, 450 U.S. 24, 32 (1981). For example, a statute or regulation which increases the penalty upon parole revocation for those convicted prior to its enactment violates the prohibition against *ex post facto* laws. *Johnson v. United States*, 529 U.S. 694, 701 (2000). But not every change which affects the terms and conditions of a prisoner's confinement does so, only those that create "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Morales*, 514 U.S. at 508-09.

Several courts, including the United States Court of Appeals for the Sixth Circuit, have held, however, that because the federal parole guidelines are not "laws" within the meaning of the *Ex Post Facto* Clause, their retroactive application states no constitutional claim. *McKissick v. United States Parole Comm'n*, 295 F.Supp.2d 643, 647 (S.D.W.Va. 2003 (collecting cases) (*citing Ruip v. United States*, 555 F.2d 1331, 1335 (6th Cir. 1977)); *Michael v. Ghee*, 411 F.Supp.2d 813, 820 (N.D. Ohio 2006). This conclusion appears to have survived the Supreme Court's holding in *Garner v. Jones*, 529 U.S. 244 (2000). In *Garner*, the Supreme Court held that a change in the Georgia Parole Board's parole *eligibility* rules, granting discretion to

decrease the frequency of parole consideration hearings for certain classes of prisoners from three years to eight years, is subject to scrutiny under the *Ex Post Facto* Clause. Nonetheless, some courts have concluded that parole *suitability* guidelines are not subject to *ex post facto* review even after *Garner*. *See Glascoe v. Bezy*, 421 F.3d 543 (7th Cir. 2005) (distinguishing parole statute involved in *Morales* and rules addressed in *Garner* from parole guidelines; *citing Warren v. Baskerville*, 233 F.3d 204, 208 (4th Cir. 2000), and *Pindle v. Poteat*, 360 F.Supp.2d 17, 20 (D.D.C. 2003) (collecting cases)); *contra Fletcher v. District of Columbia*, 391 F.3d 250, 251 (D.C. Cir. 2004).

Even were the U.S.P.C. parole suitability guidelines for D.C. Code violators subject to the prohibition on *ex post facto* laws, courts have repeatedly sustained them against challenges by petitioners who are in circumstances similar to Skinner. *See McKissick v. United States Parole Comm'n*, 295 F.Supp.2d 643, 648-50 (S.D.W.Va. 2003); *Terry v. Reilly*, 2006 WL 1133888, *4 (N.D.W.Va. 2006) (application of 2000 revision to U.S.P.C. parole guidelines to petitioner convicted in 1978 does not violate *Ex Post Facto* Clause). In those cases, as here, the same factors used by the U.S.P.C. to deny Skinner parole, including the extremely violent nature of his crimes, other offense conduct, and post-incarceration conduct, were express factors to be considered under the D.C. Code parole guidelines in effect at the time Skinner was convicted. Those same D.C. Code guidelines likewise afforded the D.C. Parole Board discretion to depart from the applicable guidelines. *See* D.C. Mun. Regs. tit. 28 §§204.1, .4-.16, .22; *see also Glascoe v. Bezy*, 421 F.3d 543 (7th Cir. 2005); *Muhammed v. Mendez*, 200 F.Supp.2d 466, 470 (M.D. Pa. 2002) (transfer of authority for making parole decisions to the U.S.P.C. did not change

the parole guidelines, but merely granted authority to amend those rules).  Therefore, their application to him does not present "a sufficient risk of increasing the measure of punishment attached to the covered crimes."  *California Dept. of Corrections v. Morales*, 514 U.S. 499, 509 (1995).

Finally, the Court notes that any *ex post facto* claim regarding the U.S.P.C.'s 1999 decision to extend Skinner's rehearing date from 22-28 months to 60 months appears to have been rendered moot, because the extended rehearing date in November 2004 has long since come and gone.  Further, it is difficult to conceive how Skinner can plausibly assert that the U.S.P.C.'s 2004 decision to use his mandatory release date as a basis to ***downward*** depart from the applicable guideline range can state an *ex post facto* claim, because  its application to him does not "increase[] the punishment for a crime that an individual has already committed."  Therefore, Petitioner's *ex post facto* arguments fail.

### 3.  Claim that Departure from Guidelines was Arbitrary and Capricious

It is well-established that the Constitution does not, of its own force, provide a protectible liberty interest in parole.  *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7 (1979); *Ellis v. Dist. of Columbia*, 84 F.3d 1413, 1415 (D.C. Cir. 1996).  Nor do the D.C. parole statute or the implementing U.S.P.C. regulations create one.  *Id.* at 1415-20; *Blair-Bey v. Quick,* 151 F.3d 1036, 1047-48 (D.C.Cir.1998); *Simmons v. Shearin,* 295 F.Supp.2d 599, 602 (D.Md. 2003); *Muhammad v. Mendez,* 200 F.Supp.2d 466, 470 (M.D.Pa.2002); *Price v. Barry,* 53 F.3d 369, 370 (D.C. 1995).  Therefore, Skinner cannot state a Due Process claim based upon an asserted violation by the U.S.P.C. of its own parole suitability regulations.

Skinner appears to mount a direct challenge to the rationality of the U.S.P.C.'s interpretation of its own regulations under the APA. Congress long ago vested responsibility for parole suitability determinations to the discretion of the U.S.P.C. *United States v. Addonizio,* 442 U.S. 178, 188 (1979). Because of that grant of authority, the function of judicial review of a U.S.P.C. decision on a petition for writ of habeas corpus is extraordinarily limited. *Farkas v. United States*, 744 F.2d 37, 39 (6th Cir.1984) ("the Parole Commission's substantive decision to grant or deny parole is an action 'committed to agency discretion' under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), and thus is insulated from judicial review."). The Court may not second-guess the U.S.P.C.'s judgment unless the exercise of its discretion represents an egregious departure from rational decision-making. *See Butler v. United States Parole Commission,* 570 F.Supp. 67-77 (M.D.Pa.1983); *Hackett v. United States Parole Comm'n*, 851 F.2d 127, 130 (6th Cir. 1987) ("'[T]he inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons.'")

Therefore, with regard to the decision itself, this Court's review is quite circumscribed. A federal court reviewing a U.S.P.C. parole decision may only: (1) satisfy itself that the Commission's decision was within its statutory and regulatory authority to act; and (2) ensure that the Commission's decision has a rational basis. *Kimberlin v. White*, 7 F.3d 527, 533 (6th Cir. 1993); *Hackett*, 851 F.2d at 129-30; *Farkas v. United States*, 744 F.2d 37, 39 (6th Cir. 1984). As to the first inquiry, Skinner does not suggest, nor could he, that the U.S.P.C. lacked the statutory authority to make his parole determination. As the second, "the inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even

by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions." *Hinson v. United States*, 205 F.3d 1340, 1999 WL 1296871 at *1 (6th Cir. 1999) (unpublished disposition). Factual determinations made by the U.S.P.C. in the process of making its parole determination are thus not subject to review. *Farkas*, 744 F.2d at 39 ("factual findings on these points are necessary components of the Commission's ultimate decision to deny parole and are not subject to review by this court."); *see also Goodman v. Hurst*, 47 F.3d 1168 (6th Cir. 1995) (applying *Farkas* to prisoners serving their sentence in a federal correctional facility for violation of the District of Columbia Code).

Although Respondent has not addressed Skinner's APA claim, it nevertheless fails as a matter of law. The record reveals that the U.S.P.C., in the pre-hearing assessment, the examiner's hearing summary, and Notice of Action, fully reviewed the record and made its determinations in accordance with the applicable regulations. The U.S.P.C. cited evidence from the pre-sentence investigative report and eyewitness testimony that Skinner approached the victim from behind, pulled a hood over his head, and shot him multiple times in support of its conclusion that his current offense involved violence and the death of a victim and rejecting his contention of self defense. It further recited that at least one of his prior offenses involved violence to add three points in Category III, and noted his five disciplinary infractions of institutional rules to justify its addition of 0-10 months for the disciplinary guideline range. Because the record discloses ample justification for each of these discretionary determinations, there is no question that there is a rational basis to support the Commission's decision to deny Skinner parole, and that decision is insulated from the Court's review. *Hackett*, 851 F.2d at 129.

### 4. Double Counting Claim

Skinner also asserts that, in his 2004 parole denial, the U.S.P.C. engaged in impermissible "double counting" by using the same facts to both establish his guideline range and then to depart from it. The Sixth Circuit long ago reviewed similar claims that the Commission had "double counted" in the parole context:

> Petitioner's second challenge goes to the practice of 'double counting' employed by the Commission to [both] fix a prisoner's offense severity rating and also, if warranted, to increase the prisoner's parole eligibility date beyond the recommended period. . . .
>
> Various circuits have approved the practice of 'double counting' as consistent with the intent of Congress in passing the parole statutes. *Sotelo v. Hadden*, 721 F.2d 700 (10th Cir. 1983); *Alessi v. Quinlan*, 711 F.2d 497, 500 (2d Cir. 1983). Generally, the question of extending the parole date beyond recommended guidelines is left to the discretion of the Commission. *See Adams v. Keller*, 736 F.2d 320, 324 (6th Cir. 1984) (en banc). Considering the aggravating factors surrounding petitioner's case, the Commission did not abuse its discretion in extending petitioner's parole date.

*Robinson-Bobb v. Young*, 774 F.2d 1163, *2 (6th Cir. 1985) (unpublished disposition). *See also Persico v. Gluch*, 948 F.2d 1289 (6th Cir. 1991) (unpublished disposition) (rejecting double counting claim); *Simmons v. Shearin*, 295 F.Supp.2d 599 (D.Md. 2003).

In establishing Skinner's guideline range, the U.S.P.C. considered Skinner's age at the time his incarceration commenced and prior commitments to establish his Salient Factor Score of 3. It also considered the high level of violence in his current offense and violence in at least one prior offense in determining his Base Point Score, and institutional infractions in determining adjustments for negative institutional behavior. Had the Commission used any of these facts again as a justification to depart upward from the resulting guideline range, it would

be subject to a claim of impermissible double counting. But as previously noted, the U.S.P.C. departed downward, not upward, and did so not because of any of the aforementioned facts, but because Skinner's mandatory release date would arrive prior to the expiration of the low end of the applicable guideline range. Accordingly, no "double counting" occurred. *Simmons*, 295 F.Supp.2d at 603.

Accordingly, it is **ORDERED** as follows:

(1) Petitioner Skinner's petition for a writ of habeas corpus is **DENIED.**

(2) The Court certifies that any appeal would not be taken in good faith. 28 U.S.C. §1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997).

(3) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent.

This 22nd day of August, 2006.



Signed By:
*Danny C. Reeves* DCR
United States District Judge